UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Global Traffic Technologies, LLC,

      Plaintiff,

v.

Emtrac Systems, Inc.;
Kristopher Morgan; Andrew
Morgan; Rodney K. Morgan; and
KM Enterprises, Inc.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 10-4110 ADM/JJG

___

Chad Drown, Esq., Timothy M. Sullivan, Esq., Ari B. Lukoff, Esq., David J. F. Gross, Esq., James W. Poradek, Esq., Katherine S. Razavi, Esq., Lucas J. Tomsich, Esq., and Timothy E. Grimsrud, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Plaintiffs.

Jonathan D. Jay, Esq., Terrance C. Newby, Esq., and Nicholas S. Kuhlmann, Esq., Leffert Jay & Polglaze, PA, Minneapolis, MN, on behalf of Defendants.

___

## I. INTRODUCTION

On May 30, 2012, a <u>Markman</u> hearing was held before the undersigned United States District Judge in this patent infringement action by Plaintiff Global Traffic Technologies, LLC ("GTT") against Defendants Emtrac Systems, Inc., Kristopher Morgan, Andrew Morgan, Rodney K. Morgan, and KM Enterprises, Inc. ("KME") (collectively "Emtrac"). GTT alleges that Emtrac infringed claims of U.S. Patent No. 5,539,398 (the "'398 Patent"). Emtrac denies the infringement allegations and counterclaims for declaratory judgment of non-infringement and invalidity of the '398 Patent.

## II.  BACKGROUND

The '398 Patent relates to a traffic preemption system ("TPS") based on Global Positioning Systems ("GPS").  Emergency vehicles and public transportation vehicles, referred to as "priority vehicles," are often equipped with a TPS.  See Jay Aff. [Docket No. 83] Ex. 1 ("the '398 Patent") at 1:22-23.  Without a TPS, priority vehicles would often be required to cross at intersections against a red light to get swiftly to their destination, thereby increasing the likelihood of traffic accidents.  Id. at 1:27-32.  A TPS functions to either prolong a green light to allow that vehicle to proceed through the intersection or switch the light from red to green.  Id. at 1:41-45.

From its inception in the 1960s, TPS has evolved significantly.  The first generation TPS was an optical preemption system, whereby an emitter on top of a vehicle produced strobes of light directed at detectors mounted on or near traffic lights.  See generally '398 Patent at 1:36-39) (citing U.S. Patent No. 3,500,078)).  These detectors then relayed a signal to the intersection cabinet, which processed the signal and directed the traffic light to change from red to green.  Id.  Optical systems have several disadvantages however, including that the vehicle must have a direct line of sight to the intersection for the strobe light to hit the detector, and weather may interfere with the transmission of the strobe light. Id. at 2:55-58, 3:42-43.

The second generation TPS was a radio preemption system, which sent radio signals from the vehicle to the intersection.  See '398 Patent at 2:65-67.  Radio preemption systems did not require a direct line of sight and they were not as focused or directionally-oriented as the optical systems.  Id. at 3:31-33.  However, this sometimes resulted in the unintended triggering of traffic signal systems at

adjacent intersections.  Id. at 3:5-11.

Third generation TPS uses GPS, rather than diffused radio or optical signals, to enable priority vehicles to pass unimpeded through selected intersections.  '398 Patent at 3:48-53.  Both GTT and Emtrac have designed, patented, and produce TPS which utilize GPS technology.

On December 13, 2011, a Joint Claim Construction Statement [Docket No. 74] was filed, identifying eight disputed terms in the '398 Patent.  At the Markman hearing, Emtrac withdrew its request for this Court to construct the claim "intersection," leaving seven claims for construction below.

### III.  DISCUSSION

**A.    Standard of Review**

Claim construction is a matter of law.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).  In construing claims, courts should look first to intrinsic evidence, which includes the claims, the specification, and the prosecution history.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Claim terms are "generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  However, a patentee can choose to be "his or her own lexicographer by clearly setting forth an explicit definition for a claim term."  Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999).  "[A] claim term "should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."  Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001).  In addition, the specification is usually "dispositive; it is the single best guide to

the meaning of a disputed term." Vitronics, 90 F.3d at 1582.  Courts are nonetheless cautioned not to import limitations from the specification into the claims.  Phillips, 415 F.3d at 1323; Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[I]t is the *claims*, not the written description, which define the scope of the patent right.").   However, specifications can limit the construction of a means-plus-function claim.   Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1361 (Fed. Cir. 2000).  Claims amenable to more than one construction should be interpreted so as to preserve their validity if reasonably possible.  Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1356 (Fed. Cir. 1999) (quoting Modine Mfg. Co. v. U.S. Int'l Trade Comm'n, 75 F.3d 1545, 1556 (Fed. Cir. 1996)).

While courts can consider extrinsic evidence to educate themselves about the patent and technology at issue, it is improper to rely on extrinsic evidence in construing claims unless, after consideration of all the intrinsic evidence, ambiguity remains.  Mantech Envtl. Corp. v. Hudson Envtl. Serv., Inc., 152 F.3d 1368, 1373 (Fed. Cir. 1998); Vitronics, 90 F.3d at 1584.  Extrinsic evidence is "evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles."  Vitronics, 90 F.3d at 1584.  Dictionaries may be useful to courts in understanding the ordinary and customary meaning of words, and courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."  Phillips, 415 F.3d at 1322-23 (quoting Vitronics, 90 F.3d at 1584 n.6)).  Where the meaning of a word is readily understood without need for clarification or explanation, no claim construction is necessary.  See U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[Claim construction] is not an

obligatory exercise in redundancy.").

**B.    Claim Construction**

    **1.    "associated with the location"**

GTT submits that the phrase "associated with the location" as used in Claim 1, does not need to be construed. Emtrac disagrees and asks the Court to construe the phrase to mean "at the intersection where the traffic signal that is to be preempted is located, which also contains the intersection module that receives the vehicle data."

Claim 1 refers to "means, <u>associated with the location</u>, for receiving the vehicle data" and "mapping means, <u>associated with the location</u>, for storing a plurality of positions corresponding to the allowed approaches to the location. . ." '398 Patent at 9:34–39 (emphasis added). The phrase "associated with the location" is unambiguous, well-understood, and a phrase which needs no construction by the Court. See <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Dictionaries "are often useful to assist in understanding the commonly understood meaning of words" and are routinely used in claim interpretation. <u>Id</u> at 1322. "Associate" is alternatively defined as "to bring together or into relationship in any of various intangible ways (as in memory or imagination)," Merriam-Webster's Collegiate Dictionary 74 (11th Ed. 2007), "[t]o connect in the mind or imagination," The American Heritage Dictionary of the English Language 108 (5th ed. 2011), "[t]o correlate or connect logically or causally," <u>id.</u>, or to "connect (someone or something) with something else in one's mind," New Oxford

American Dictionary 97 (3d. ed. 2010).  These definitions neither specify nor require physical connection or location within the definition of "associate."  The meaning of the phrase "associated with the location" — being logically or intangibly connected or related to a given place — is understandable by a juror, and further explanation risks confusion and redundancy.  See U.S. Surgical Corp., 103 F.3d at 1568.  Although the terms "associated" and "location" are broad words, inventors are "free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning. . . ." Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1367 (Fed. Cir. 2012).  Emtrac's proposed construction, with its locational limitation, would unduly limit the broad phrase "associated with the location."

While the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in context of the specification and prosecution history, two exceptions to this rule exist: "(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner, 669 F.3d at 1365 (citing Vitronics, 90 F.3d at 1580). Neither of these exceptions applies here.  Emtrac does not argue GTT acted as its own lexicographer, but instead appears to argue that GTT disavowed the full scope of the claim term in the specification. Emtrac's argument for incorporating these spatial limits relies on (1) the surrounding context of the claim and (2) the specification.  The specification cannot be used to incorporate limitations in this way. Phillips, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Moreover, the context of Claim 1 does not require the incorporation of spatial limits as Emtrac

requests. Emtrac argues that "location" in Claim 1 is limited to the intersection, in that it states it is a "system for determining whether a vehicle having an associated vehicle path is within an allowed approach of <u>a location</u>." '398 Patent at 9:26–28 (emphasis added). However, the phrase "associated with a location," even if the word "location" is interpreted to mean only an intersection, does not require Emtrac's claim construction limiting the intersection module to be located only at the intersection.

Emtrac also cites to the summary section of the '398 Patent, which states that "[e]ach intersection is equipped with an intersection module adapted to receive and process the vehicle data." <u>Id.</u> at 3:56–58. This argument fails, however, since the equipping of each intersection with an intersection module does not require that the module be physically located at the intersection. Further, GTT did not expressly and clearly disavow the full scope of its claim language. <u>See, e.g.</u>, <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (finding disavowal where the patentee disparaged prior art, repeatedly described his invention as a certain kind of design, and where the specification stated that the specific design was the basic "structure for all embodiments of the present invention contemplated and disclosed herein."). To disclaim or disavow a particular definition, the patentee must do so clearly and unmistakably. <u>See</u> <u>Thorner</u>, 669 F.3d at 1367. The '398 Patent did not criticize prior art where the TPS components were located in a vehicle, nor did it list reasons or advantages for locating maps at the intersection. Because GTT did not clearly disavow the plain and ordinary meaning and full scope of its claim, the

disavowal exception does not apply and "associated with the location" is given its plain and ordinary meaning.

> **2.     "mapping means, associated with the location, for storing a plurality of positions corresponding to allowed approaches to the location and providing therefrom a map of allowed approaches"**

In addition to arguing for a new construction of the phrase "associated with the location," Emtrac next contends that the entire phrase surrounding that language in Claim 1 falls under a means-plus-function limitation analysis and should thus be read as follows: "the device that stores a preprogrammed map of allowed approaches to the intersection is located at the intersection where the traffic signal that is to be preempted is located, and not in the vehicle." GTT retorts that the phrase does not implicate the means-plus-function analysis.

Means-plus-function claim elements are interpreted according to 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"Whether certain claim language invokes 35 U.S.C. § 112, ¶ 6 is an exercise in claim construction and . . . a question of law." Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 702 (Fed. Cir. 1998). Under 35 U.S.C. § 112, ¶ 6, the Court engages in a two-step process in construing means-plus-function terms: (1) the Court construes the function recited, and (2) then determines what structures have been disclosed in the specification that correspond to the means for performing the identified function. Kemco Sales, 208 F.3d at 1361. A court "may not import into the

claim features that are unnecessary to perform the claimed function." Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1352 (Fed. Cir. 2003) (citation omitted).

The parties do not agree that this claim phrase is in a means-plus-function form. The use of the phrase "means for" typically invokes means-plus-function analysis. Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1318 (Fed. Cir. 1999); see Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("Claim drafters conventionally use the preface 'means for' (or 'step for') when they intend to invoke [35 U.S.C. § 112(6)] . . . ."). The language here, "mapping means . . . for" is in means-plus-function form and invokes that analysis.

The function set forth in Claim 1 is plain: "storing a plurality of positions corresponding to allowed approaches to the location and providing therefrom a map of allowed approaches." '398 Patent 9:37-40. The second part of the analysis is what structures in the specification correspond to the means for performing these functions. Here, the "mapping means" is clarified in the specification as "map memory." '398 Patent at 5:57–59. GTT's proposed construction of this structure is "memory configured to store data," while Emtrac's proposed construction is "the device that stores a preprogrammed map of allowed approaches." Joint Claim Construction Statement 11, 14. Neither of these definitions adequately describes the structure. The Court construes the phrase "map memory" as "computer map memory," finding that "computer map memory" recites a sufficiently definite structure to perform the claimed function. See Optimal Recreation Solutions LLP v. Leading Edge Tech., Inc., 6 F. App'x 873 (Fed. Cir. 2001).

This structure definition does not include a specific placement; the physical location of the "computer map memory" is irrelevant to performing the twin functions of storing positions and providing

a map of allowed approaches. It appears that Emtrac argues that limitation should be based on the phrase "associated with the location," but as previously discussed, that phrase does not require that the mapping means be physically located at the intersection. The past participial phrase is set-off by commas from the rest of the sentence, and it serves to modify "mapping means" rather than to impose a limitation on the means-plus-function phrase. Therefore, no location limitation is warranted.

### 3. "map of allowed approaches"

GTT proposes the term "map of allowed approaches" in Claims 1, 2, 11, 16, and 18 be given its plain meaning, while Emtrac urges a proposed construction of "a preprogrammed map of routes to the intersection where the traffic signal that is to be preempted is located, said map being stored at the intersection." Joint Claim Construction Statement 16. For the aforementioned reasons, this Court will not construe this claim to include a locational limitation and therefore rejects the language "said map being stored at the intersection." As for the other term changes proposed by Emtrac, the map of allowed approaches is already defined as being programmed in the claim. See '389 Patent at 10:24-25 ("a programmed map of allowed approaches to the intersection"), 10:27 ("the programmed map"). It is also defined as being programmed in the specification. See also '389 Patent at 5:59-61 ("The map is programmed into the intersection module while the module is in 'mapping' mode, as is described in more detail below . . . ."). Although the phrase "preprogrammed" is used in Claim 16, the phrase is redundant and would serve no purpose here. Further, because no location-specific limitation applies to the map of allowed approaches, the Court will construe the claim according to its plain meaning.

4.     "associated with the vehicle"; "associated with a vehicle"

As with all the claims to be construed, GTT urges this Court to adopt the plain meaning of this phrase as used in Claims 1 and 11.  Emtrac proposes that this Court construe these phrases as "within or attached to the (a) vehicle that is approaching the intersection where the traffic signal that is to be preempted is located."   As explained more fully in Section III(B)(1), the words "associated with a/the vehicle" do not limit the navigation means in Claim 1 or the vehicle module in Claim 11 to the physical location of the vehicle.  Notwithstanding the specification in Figure 1 depicting an embodiment in which the navigation means is physically located on the vehicle, the word "associated" does not require such a reading and will not be construed to so limit the claims.  Emtrac further argues that the geographic limitation is part of a means-plus-function clause; however, for the aforementioned reasons, the word "associated" is not such a limitation.  Both phrases will be construed in their plain meaning.

5.     "associated with an intersection;" "associated with the intersection"

GTT again urges this Court to adopt the plain meaning of this phrase as used in Claim 11, while Emtrac requests this Court to construe the phrase as "within or attached to equipment at the intersection where the traffic signal to be preempted is located."  Because it has previously been determined that the phrases "associated with a/the location" and "associated with a/the vehicle" do not specify a specific location, the word "associated" here  is likewise determined not to impose a physical, geographical limitation to the '398 Patent.  The phrase will be construed in its plain meaning.

6.     "transmitting the vehicle data"; "transmitting vehicle data"

GTT proposes that this Court give the phrase "transmitting [the] vehicle data" its plain meaning as used in Claims 1, 11, 16 and 17, while Emtrac proposes a construction of the phrase as "delivering

data gathered by a vehicle to an intersection module that is located at an intersection." As previously explained, the '398 Patent does not require such geographic limitation.

Emtrac also argues, for the first time in its Opening Claim Construction Brief [Docket No. 82], that the phrase "vehicle data" is indefinite under 35 U.S.C. § 112, ¶ 2, which would render "any claims containing this term invalid." Opening Claim Construction Brief 34. Specifically, Emtrac contends that Dependent Claim 8 and Dependent Claim 10 are at odds with Claim 1. Dependant Claim 8 defines "vehicle data" as "position heading and velocity data corresponding to the vehicle," while Dependent Claim 10 defines vehicle data as "further includ[ing] vehicle heading and vehicle velocity data." From these essentially redundant statements, Emtrac urges this Court to find the two statements irreconcilable and therefore "insolubly ambiguous" and "indefinite" in violation of 35 U.S.C. § 112, ¶ 2.

Emtrac's argument fails for several reasons. Foremost, Emtrac raises this indefiniteness argument for the first time in its Opening Claim Construction Brief filed on May 3, 2012. The argument was conspicuously absent from the Joint Claim Construction Statement, as well as from its interrogatory responses submitted in February 2011 and February 2012 or its court-ordered prior art statement submitted on June 30, 2011. See Tomsich Decl. [Docket No. 89] Exs. A–C.[1] The argument is impermissibly tardy. Federal Rule of Civil Procedure 37 requires that "[i]f a party fails to provide information . . . , the party is not allowed to use that information . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 16 grants courts the authority to set

---

[1] The only mention of indefiniteness in any of these documents comes in the prior art statement, where Emtrac attempts to hedge its position by reciting that "In proffering this Prior Art Statement, [Emtrac] in no way waives its right to assert other invalidity and unenforceability defenses, including but not limited to indefiniteness. . . ." Tomsich Decl. Ex. C at 3.

management deadlines and impose sanctions, such as exclusion, when those deadlines are violated. Fed. R. Civ. P. 16(b, f). Courts have routinely excluded arguments and evidence raised at a "late stage of the proceedings." ELCA Enter., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 190 (8th Cir. 1995) (finding that because "parties must provide clear and accurate responses to discovery requests," a party's "eleventh hour attempt to switch the basis for its alleged damages" was properly excluded); see also Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008) (finding even evidence submitted in technical compliance with the prior art requirements of 35 U.S.C. § 282 to be excludable when the late disclosure "stripped [the opposing party] of any meaningful opportunity to prepare an adequate cross-examination of the reference."); McDavid Knee Guard, Inc. v. Nike USA, Inc., 809 F. Supp. 2d 863, 878 (N.D. Ill. 2011) (finding that a party waived the invalidity defense of indefiniteness when it had not previously raised the issue and offered no valid reason for its failure). The failure to make this argument any time prior to the month before the claim construction hearing is unjustified and prejudices GTT. Moreover, Emtrac has failed to muster any argument as to why the indefiniteness argument was not timely raised. As a result, this argument is rejected.

Even were this argument timely asserted, it fails on its merits. While Emtrac attempts to conjure a radical inconsistency between Dependent Claims 8 and 10, it is evident that they are a redundant mistake. Emtrac does not explain how defining vehicle data as "position heading and velocity data" which "further includes vehicle heading and vehicle velocity data" is anything beyond inartful. While redundant, the phrase "vehicle data" is not "insolubly ambiguous" — the vehicle data definitely includes heading and velocity, perhaps more. Emtrac has failed to prove that the claim is indefinite by clear and

convincing evidence. Halliburton Energy Serv., Inc. v. M-I LLC, 514 F.3d 1244, 1249–50 (Fed. Cir. 2008). "[T]wo claims with different terminology can define the exact same subject matter," Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1380 (Fed. Cir. 2006), and so the test is whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001). The mere use of redundant definitions of vehicle data, as well as the interchangeable use of "position" and "vehicle" to describe "heading," do not render this claim indefinite. The phrase, therefore, will be given its plain meaning.

Finally, Emtrac argues that the phrase "transmitting the vehicle data" or "transmitting vehicle data" should be construed as "delivering data via a wireless link gathered by a vehicle to an intersection module that is located within or attached to equipment at an intersection." Emtrac argues that these phrases are part of a means-plus-function claim and that the wireless link is the only structure disclosed by the specification which could perform the function of transmitting vehicle data. However, the phrase "transmitting [] vehicle data" is not a means-plus-function limitation — it is the function itself. Moreover, the word "transmitting" is not geographically limited. See American Heritage Dictionary 1846 ("To send from one person, thing, or place to another"); Oxford American Dictionary 1840 ("cause (something) to pass on from one place or person to another"). Accordingly, this phrase will be construed in its plain meaning.

> 7. **"an intersection module associated with an intersection and adapted to track the vehicle path, the intersection module comprising:"**

GTT asserts that this phrase in Claim 11 can be given its plain meaning, while Emtrac proposes

14

that the phrase be construed to mean "a device located within or attached to the intersection where the traffic signal that is to be preempted is located, and which contains (1) a preprogrammed map of allowed approaches to the intersection and (2) a processor that receives data from a vehicle and compares that data with the preprogrammed map of allowed approaches."  Emtrac's proposed construction once again attempts to import a geographic location limitation into the term "intersection module" via the word "associated, but for the previously explained reasons, no such limitation is required.  While Emtrac highlights the phrase in the Summary section of the '398 Patent — "[e]ach intersection is equipped with an intersection module" — as support for its proposition that the intersection module must be physically located at the intersection itself, the word "equipped" carries no such locational requirement.  '398 Patent 3:56-57; see Oxford American Dictionary 586 (defining equip as to "supply with the necessary items for a particular purpose"); Merriam-Webster's Collegiate Dictionary 422 (defining "equip" as "to furnish for service or action by appropriate provisioning").  Further, the word "programmed" is not required to be construed as "preprogrammed."  See Oxford American Dictionary 1395 (defining "program" as to "(1) provide . . . with coded instructions for the automatic performance of a task . . . (2) arrange according to a plan or schedule . . . .").  The remainder of Emtrac's proposed construction tracks language already in Claim 11, thereby rendering it redundant and unnecessary.  Accordingly, this phrase will be construed in its plain meaning.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that, in interpreting the '398 Patent, the disputed terms will be construed in accordance with this Order.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 13, 2012.